UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHYLAR BRYNN MICHAELS,              :
                                    :
    Plaintiff,                      :
                                    :
v.                                  :   CASE NO. 3:05-CV-828 (RNC)
                                    :
ATTORNEY GENERAL,                   :
DEPARTMENT OF JUSTICE,              :
                                    :
    Defendant.                      :

## RULING AND ORDER

Plaintiff, proceeding pro se, brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq. ("Rehabilitation Act"), claiming disability discrimination, sexual harassment and retaliation. Defendant has moved for summary judgment [doc. # 44]. For the reasons that follow, summary judgment is granted on the disability discrimination and retaliation claims but denied on the claim of sexual harassment.

### Facts

Plaintiff was employed by the Bureau of Prisons as a medical secretary at FCI Danbury from August 12, 2001 until January 22, 2002. Plaintiff's employment was conditioned on her successful completion of a one-year probationary period ending in August 2002. On January 7, 2002, plaintiff's supervisor, Pedro Hernandez, prepared a memorandum stating that plaintiff had left

her institutional keys unsecured on her desk on January 2, 2002, and that despite being reminded to keep her institutional keys secured to her body as required by BOP policy, she had been seen holding the keys in her hand in an unsecured manner on January 7. Plaintiff refused to sign the supervisor's memorandum.

On January 22, 2002, the Warden of FCI Danbury terminated plaintiff's employment five months into the probationary period. The Warden stated that plaintiff had not fulfilled the requirements for continued employment because she had twice received counseling about the proper handling of institutional keys with no noticeable improvement in her behavior.

Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission (EEOC) on August 17, 2002, alleging disability discrimination, sexual harassment and retaliation. On May 4, 2004, the EEOC found for the defendant. The Department of Justice Complaint Adjudication Office adopted the EEOC decision on June 23, 2004. Plaintiff timely appealed the final order to the EEOC's Office of Federal Operations then filed this case. See 29 C.F.R. § 1614.407(d).

In support of her claim of disability discrimination, plaintiff offers evidence that she has degenerative disc disease, arthritis and bursitis, feels pain after walking long distances and is unable to bend over to bathe her child. The record would permit a jury to find that some of plaintiff's co-workers at FCI

Danbury knew she had back and neck pain and parked in a handicapped space. It is undisputed that plaintiff was able to perform her secretarial duties, requested no special accommodations, and successfully completed a training course in correctional techniques that included physical components.

In support of her sexual harassment claim, plaintiff offers evidence that she was subjected to offensive and unwelcome conduct by a staff physician at FCI Danbury, John Vogliano. Recently, in response to the Court's request for an affidavit clarifying the factual basis for this claim, plaintiff submitted an affidavit containing the following allegations:

> It is my testimony that Dr. Vogliano did in fact refer to females as "dumb, incompetent sluts[,]" "whores[,]" "bitches[,]" and "cunts" on a repetitive basis. He used to refer to our former Warden as "THE cunt" whenever he'd speak of her. On one occasion, he said to me, "I probably shouldn't say this but why don't you get down on all fours like you always do and fix it (the phone) yourself." He also called the inmates "niggers" always. He had a very foul mouth. It was in his nature and character to speak in this manner. He used profanity very often. I don't know exactly how many times that he said a certain word. Fact is, he only has to say it once, although, unfortunately, he said "cunt" on several occasions as stated in the previous paragraph. He used "slut" most often and also referred to women using the phrases "bitches" and "whores." Fact is, he used some form of offensive language on a daily basis.

Plaintiff did not file a formal complaint about the alleged

harassment until after her employment was terminated. The complaint lists her first date of EEO contact as "2/02/02." Plaintiff alleges, however, that she took steps to complain about Vogliano's conduct by contacting an EEO officer in October or November 2001. The record contains evidence that plaintiff asked for the name of an EEO counselor as early as October or November 2001, and that she communicated with EEO Representative Jenna Lewis before her employment was terminated.

Discussion

### Disability Discrimination

Plaintiff claims that defendant discriminated against her based on her physical disabilities in violation of the Rehabilitation Act. She points to: (1) a physician assistant's refusal to treat her when she became ill while participating in the training course in correctional techniques; (2) an alleged statement by her supervisor that if she was disabled, she should not be working for defendant; and (3) the termination of her employment. Defendant is entitled to summary judgment on this claim because plaintiff has failed to demonstrate that she has a disability within the meaning of the Rehabilitation Act.

To establish a prima facie case of discrimination under the Rehabilitation Act, plaintiff must demonstrate that she is a qualified individual with a disability. See Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir. 2004). The Act defines

4

an individual with a disability as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). Plaintiff's degenerative disc disease, arthritis and bursitis could conceivably qualify as physical impairments under the first prong of this definition. See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 194-195 (2002)(physical impairment under Rehabilitation Act includes "any physiological disorder" affecting the musculoskeletal system). And her ability to walk and bend might qualify as major life activities under this prong. See Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 643 (2d Cir. 1998). But she has not shown that her impairments "substantially limit" the activities of walking and bending. Toyota, 534 U.S. at 195-196.

To determine whether an impairment substantially limits a person in performing a major life activity, courts consider the nature, severity, duration, and long-term impact of the impairment. Id. Plaintiff's strongest evidence of substantial impairment consists of her EEOC testimony that she was permanently unable to "walk long distances without experiencing pain either that day or the next," and was unable to bend to bathe her child. Inability to walk long distances is not

5

considered to be a substantial limitation on the major life activity of walking.  See Colwell, 158 F.3d at 644 (inability to walk for more than an hour not substantially limiting); Piascyk v. City of New Haven, 64 F. Supp. 2d 19, 27-28 (D. Conn. 1999), aff'd, 216 F.3d 1072 (2d Cir. 2000)(inability to walk for more than half a mile not substantially limiting).  Inability to bend to bathe a child is similarly insufficient to establish a substantial limitation on the major life activity of bending. See id. at 31-32 (collecting cases related to bending).

Plaintiff also fails to satisfy the other prongs of the Rehabilitation Act's definition of an individual with a disability.  With regard to the second prong of the definition, she has not shown that she has a record of a substantially limiting impairment.  29 U.S.C. § 705(20)(B)(ii).  She refers to having provided defendant with "medical notes" from doctors. Assuming these notes reflect treatment she received for her degenerative disc disease, arthritis and bursitis, the notes would reveal no greater degree of limitation than just discussed. See Colwell, 158 F.3d at 645.  With regard to the third prong of the Act's definition, plaintiff fails to show that defendant regarded her as having an impairment that substantially limited a major life activity.  See id. at 646.  Plaintiff admits that she never requested accommodations and could perform her job without them.  Her co-workers' knowledge that she had neck and back pain

6

and a handicapped parking permit does not support a reasonable finding that they regarded her as having a substantially limiting impairment. See, e.g., Dortch v. Mem'l Herman Healthcare Sys.-Sw., 525 F. Supp. 2d 849, 871, 873-874 (S.D. Tex. 2007)(defendant's employees were aware of plaintiff's handicapped parking space yet plaintiff failed to prove "substantial limitation"). Plaintiff's testimony that her supervisor told her she should not work for the defendant if she was disabled does not support a finding that he actually regarded her as disabled within the meaning of the Act.

Sexual Harassment

Plaintiff claims that the sexual harassment she allegedly experienced at FCI Danbury created a hostile work environment in violation of Title VII. To prevail on this claim, she must prove that the workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004). See 29 C.F.R. § 1604.11. A work environment is hostile if a reasonable person would find it so based on the totality of the circumstances, including the frequency, severity, and physically threatening nature of the conduct, and the conduct's effect on the employee's work performance.

Whether plaintiff's work environment at FCI Danbury was sufficiently hostile to violate Title VII is a question of fact. See Holtz v. Rockefeller & Co., 258 F.3d 62, 75 (2d Cir. 2001). "On a motion for summary judgment, the question for the court is whether a reasonable factfinder could conclude, considering all the circumstances, that 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse*.'" Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 600 (2d Cir. 2006)(quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000)(emphasis in Whidbee).

Defendant contends that, objectively viewed, Dr. Vogliano's conduct was not sufficiently severe or pervasive to create a hostile work environment. In assessing this contention it is necessary to decide whether plaintiff's recent affidavit concerning Dr. Vogliano's conduct may be considered. Defendant contends that the affidavit should be disregarded because it contradicts her prior deposition testimony. See Trans-Orient Marine Corp. V. Star Trading & Marine, Inc., 925 F.2d 566, 572 (2d Cir. 1991). At her deposition, plaintiff was asked, "Is it your testimony that Dr. Vogliano used language that you found offensive every time he was in your presence?" Plaintiff replied, "You're asking me how often? I can't tell you how often."

I am not persuaded that plaintiff's affidavit should be disregarded. Plaintiff's deposition testimony, viewed most favorably to her, is open to the interpretation that she had "lost count" of the number of times Dr. Vogliano made offensive utterances in her presence, which arguably could bolster her claim. See Leopold v. Baccarat, Inc., 174 F.3d 261, 269 (2d Cir. 1999); Torres v. Pisano, 116 F.3d 625, 631 (2d Cir. 1997). Moreover, the affidavit is generally consistent with plaintiff's testimony in the EEOC proceeding that Dr. Vogliano used degrading remarks on a daily or almost-daily basis, her co-workers' testimony that he frequently made such remarks, and his own admission that he called women "sluts."

Crediting plaintiff's recent affidavit, and viewing it and the entire record in a light most favorable to her, I conclude that a jury could find that Dr. Vogliano's conduct created a hostile work environment. Plaintiff's allegations concerning the nature and frequency of his offensive and unwelcome remarks, if believed, place this case in the borderline category. Compare Hayut v. State Univ. of New York, 352 F.3d 733, 746-47 (2d Cir. 2003) (frequency of sexual comments transformed them into an actionable constitutional tort), Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000) (obscene comments made at length, loudly, and in a large group could intolerably alter working conditions), and Whidbee, 223 F.3d at 70-71 (a "stream of

9

racially offensive comments over the span of two to three months" constituted a race-based hostile work environment), with Sardina v. United Parcel Serv., Inc., 254 Fed. Appx. 108, 110 (2d Cir. 2007) (a few off-color and sexually suggestive comments did not create a hostile work environment), Guerrero v. Lowe's Home Ctrs., Inc., No. 06-5894-cv, 2007 WL 4009704, at *1 (2d Cir. Nov. 16, 2007) (only a few occasions of offensive name-calling over three months, without physical touching, threats, or overt sexual advances, not hostile work environment), and Cruz v. Coach Stores, Inc., 202 F.3d 560, 571 (2d Cir. 2000) ("physically threatening nature" of behavior brought repeated remarks "over the line" from merely offensive conduct to sexual harassment). The Second Circuit has pointed out that "a jury made up of a cross-section of our . . . communities provides the appropriate institution for deciding whether borderline situations should be characterized as sexual harassment." See Gallagher v. Delaney, 139 F.3d 338, 342 (2d Cir. 1998), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

Defendant contends that, even assuming Dr. Vogliano's remarks created a hostile work environment, it cannot be held liable. To hold an employer liable, a plaintiff alleging harassment by a non-supervisory co-worker must show that the employer knew, or reasonably should have known, about the

harassment and failed to take remedial action. Petrosino v. Bell Atl., 385 F.3d 210, 225 (2d Cir. 2004); Distastio v. Perkin Elmer Corp., 157 F.3d 55, 63-64 (2d Cir. 1998). Plaintiff has testified that she informed EEO Counselor Lewis about her concerns of discrimination and harassment. She also claims to have informed Associate Warden Sanchez. Moreover, Dr. Vogliano's supervisor has acknowledged that once or twice a month he overheard Vogliano make comments such as, "You know what women are good for?" On this record, viewed fully and most favorably to the plaintiff, a reasonable jury could find that defendant knew, or should have known, about the alleged harassment.

Retaliation

Both the Rehabilitation Act and Title VII prohibit an employer from retaliating against an employee because of the employee's opposition to an unlawful employment practice. See 29 U.S.C. § 794; 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, plaintiff must show: (1) that she engaged in a protected activity by opposing an unlawful practice; (2) that defendant was aware of her protected activity; (3) that she suffered an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action. Galdieri-Ambrosini v. National Realty and Development Corp., 136 F.3d 276, 292 (2d Cir. 1998).

Plaintiff claims that defendant retaliated against her because she complained about disability discrimination and sexual harassment. She alleges three retaliatory acts: (1) her supervisor's decision to mark her "AWOL" even though she had accrued leave; (2) the termination of her employment; and (3) her receipt of inaccurate advice from human resources personnel, which prevented her from applying for certain benefits. Plaintiff may not recover based on the third incident because she omitted it from her EEOC complaint. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118 (2002).[1] Accordingly, it is necessary to decide whether she has a triable claim based on the first two incidents.

Defendant contends that the first two incidents do not provide a basis for a retaliation claim because they occurred before plaintiff engaged in protected activity. Plaintiff's communications with Jennica Lewis regarding the substance of her allegations could constitute protected activity. See Hooven-Lewis v. Caldera, 249 F.3d 259, 273 (4th Cir. 2001). Plaintiff alleges that she communicated with Lewis before the "AWOL" incident and the termination of her employment.

---

[1] Plaintiff could recover for this alleged act of retaliation, even though it was omitted from her EEOC complaint, if she could show that it fell within the reasonably expected scope of the EEOC investigation or was a further incident of discrimination carried out in precisely the same manner alleged in the EEOC charge. See Alfano v. Costello, 294 F.3d 365, 381-382 (2d Cir. 2002). Neither of these tests is satisfied.

Assuming plaintiff can prove that she engaged in protected activity before these alleged acts of retaliation, plaintiff's claim must be dismissed because she has not established the requisite causal connection between the protected activity and the retaliatory acts. There is no evidence that her supervisor or Warden Deboo -- the individuals who made the decisions to mark her "AWOL" and terminate her employment, respectively -- knew that she had complained about discrimination or harassment. Their lack of knowledge is not necessarily dispositive. See Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000). But plaintiff presents no other evidence of a causal connection.

Conclusion

For the foregoing reasons, defendant's motion for summary judgment [doc. # 44] is hereby granted in part and denied in part and plaintiff's claims under the Rehabilitation Act and her Title VII retaliation claim are dismissed.

So ordered this 12th day of April 2008.

/s/ RNC
Robert N. Chatigny
United States District Judge